# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **MIAMI VALLEY FAIR HOUSING CENTER, INC.** | : | **Case No. 3:25-CV-7** |
| | : | |
| | : | **Judge Michael Newman** |
| Plaintiff, | : | |
| | : | **Magistrate Caroline Gentry** |
| v. | : | |
| | : | **ANSWER AND COUNTERCLAIM OF** |
| **PARADISE RESIDENCY, LLC,** *et al.,* | : | **ALL DEFENDANTS** |
| | : | |
| Defendants. | | |

Now come Defendants and answer Plaintiff's Complaint as follows:

1. Defendants deny the allegation in Paragraph 1 of Plaintiff's Complaint, but admit that Plaintiff "brings this action."

2. Defendants admit the allegation in Paragraph 2 of Plaintiff's Complaint.

3. Defendants admit the allegation in Paragraph 3 of Plaintiff's Complaint.

4. Defendants deny the allegation in Paragraph 4 through 9 of Plaintiff's Complaint.

5. Defendants are without information necessary to admit or deny the allegation in Paragraph 10 of Plaintiff's Complaint regarding Plaintiff's true mission and intentions, but otherwise admits the allegations in Paragraph 10.

6. Defendants admit the allegations in Paragraphs 11, 12, and 13 of Plaintiff's Complaint.

7. The allegations in Paragraphs 14 through 19, 21, 22, and 23 of Plaintiff's Complaint posit legal conclusions to which no response is required.

8. Defendants deny conducting business "across Ohio," but otherwise admit the allegations in Paragraph 20 of Plaintiff's Complaint.

9. Defendants admit the allegations in Paragraphs 24 through 26.

10. Defendants deny the allegations contained in Paragraph 27 of Plaintiff's Complaint.

11. Defendants admit the allegations contained in Paragraphs 28 through 33 of Plaintiff's Complaint.

12. Defendants admit the allegations in Paragraphs 34 and 35 of Plaintiff's Complaint, but deny that Defendants maintained an agent.

13. Defendants admit the allegations in Paragraphs 36 and 37 of Plaintiff's Complaint.

14. Defendants deny the allegations in Paragraph 38 of Plaintiff's Complaint: Defendants exclusively discussed general pet deposit policies and did not discuss assistance animal policies.

15. Defendants admit the allegations in Paragraphs 39 through 41 of Plaintiff's Complaint.

16. Defendants deny the allegations in Paragraph 42 of Plaintiff's Complaint: Defendants exclusively discussed general pet deposit policies and did not discuss assistance animal policies.

17. Defendants deny the allegations in Paragraph 43 of Plaintiff's Complaint: Defendants exclusively discussed general pet deposit policies and did not discuss assistance animal policies.

18. Defendants admit the allegations in Paragraphs 44 of Plaintiff's Complaint.

19. Defendants are without information necessary to admit or deny the allegations in Paragraphs 45 to 47 of Plaintiff's complaint.

20. Defendants deny the allegations in Paragraphs 48 and 49 of Plaintiff's Complaint, insofar as they suggest Defendants exclusively communicated any policy other than the general pet deposit policy rather than assistance animal policies.

21. Defendants deny the allegations contained in Paragraph 50, 51, and 52 of Plaintiff's Complaint.

22. Defendants answer the allegations in Paragraphs 53 through 57 of Plaintiff's Complaint describe legal filings and proceedings that speak for themselves.

23. Defendants deny the allegations in Paragraphs 58 through 86 of Plaintiff's Complaint.

24. Defendants admit the allegations contained in Paragraph 87 of Plaintiff's Complaint.

25.   Defendants deny the allegations in Paragraphs 88 through 92 of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

26. Plaintiff fails to state any claims upon which relief can be granted.

27. Plaintiff lacks standing to bring any of the claims identified in its Complaint.

28. Plaintiff's claims cannot be granted unless this Court were to affirm a standardless and unfettered delegation of governmental authority to a purely private actor.

29.  Plaintiff's Complaint fails to state any claim upon which relief could be granted because any statutory authority upon which it relies for standing to pursue the claims and relief it seeks in this case either (1) does not grant such authority; (2) is impermissibly vague with respect to whether it grants such authority; or (3) effects a standardless delegation of government authority to an unaccountable private actor.

30. Plaintiff's claims cannot be granted because they are each brough in contravention of federal regulations directly applicable to Plaintiff, which expressly precludes "the organizations conducting tests, and the employees and agents of these organizations from "hav[ing] an economic interest in the outcome of the test."

31. Plaintiff's Complaint fails to identify any relief that could be granted because granting relief would require the Court to punish protected speech rather than unprotected discrimination.

## DEFENDANT'S COUNTERCLAIM

Now come Defendants/Counterclaimants Saurin Shah, Paradise Residency, LLC, and Red Paradise, LLC respectfully posits the following Counterclaim for declaratory and injunctive relief against Plaintiff/Counterclaim Defendant Miami Valley Fair Housing Center, Inc. ("Miami Valley").

*Parties*

3

1. Defendant/Counterclaimant Saurin Shah ("Mr. Shah") stipulates to the identities articulated in Paragraphs 11, 12, and 13 of Plaintiff's Complaint.

2. Defendants recently reached a settlement agreement with the Ohio Civil Rights Commission regarding the very same alleged discriminatory practices that are the subject of Miami Valley's claims in this case. *See Exhibit 5-1.*

3. As part of the Settlement Agreement, Defendants agreed to attend educational class and engage in no future discriminatory practices. *Id.*

4. As part of the Settlement Agreement, neither the Ohio Civil Rights Commission nor Defendants concluded that Defendants engaged in discriminatory housing policies or practices. *Id.*

5. Miami Valley is a "Fair Housing Organization" pursuant to the Fair Housing Act's Fair Housing Organizations Initiative ("FHOI").

6. A substantial portion of Miami Valley's revenue, and apparently an unlawful majority thereof, is derived through receipt of Fair Housing Initiatives Program grants authorized by Section 561 of the Housing and Community Development Act of 1987 ("FHIP" or "FHIP funds"). *Id.*

7. Plaintiff and Counterclaim Defendant Miami Valley Fair Housing Housing Center, Inc. ("Miami Valley") reports on its Form 990 ("Return of Organization Exempt From Income Tax") for tax year 2023 total revenue of $739,158, of which $480,833 was derived from "government grants" and other substantial portions were derived from "other income" and "testing fees." See *Exhibit 5-4,* Form 990, at Part II, Line 10, Part VII, Line 1(e), Part VII, Line 2(c).

4

8. Due to receipt of substantial HUD funding, Miami Valley is required to comply with all federal regulations governing "testing."

9. As a Fair Housing Organization employing FHIP funds, Miami Valley is a state actor for purposes of 42 U.S.C. 1983, including with respect to Mr. Shah's free speech and due process rights here.

### Facts and Background

### *Fair Housing Act*

10. Title VIII of the Civil Rights Act of 1968, as amended ("Fair Housing Act"), prohibits discrimination in the sale, rental, or financing of dwellings and in other housing-related activities because of race, color, religion, sex (including sexual orientation and gender identity), disability, familial status, or national origin. 42 U.S.C. 3601-3619, 3631.

11. Through 42 U.S.C.A. § 3604, the Fair Housing Act describes what constitutes injurious discrimination in violation of the Act, in pertinent part, as follows:

***42 U.S.C.A. § 3604 states "it shall be unlawful—***
**(a)** To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
**(b)** To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
**(c)** To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.
**(d)** To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available . . .
\*\*\*
**(f)(1)** To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—**(A)** that buyer or renter **(B)** a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or **(C)** any person associated with that buyer or renter.

**(2)** To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--**(A)** that person; or **(B)** a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or **(C)** any person associated with that person.

**(3)** For purposes of this subsection, discrimination includes-- **(A)** a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.  **(B)** a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; * * *

### *Fair Housing Initiative Program*

12. 42 U.S.C.A. § 3616a(a)(1) ("Fair Housing Initiatives Program," or "FHIP") authorizes HUD to make grants to "public or private nonprofit organizations" to "implement" or "carry out" programs or activities designed to obtain enforcement of the rights granted by title VIII of the Act of April 11, 1968 (commonly referred to as the Civil Rights Act of 1968); "through such appropriate judicial or administrative proceedings (including informal methods of conference, conciliation, and persuasion) as are available therefor."

13. Pursuant to 42 U.S.C.A. § 3616a(b)(1), "The Secretary shall use funds made available under this subsection to conduct, through contracts with private nonprofit fair housing enforcement organizations, investigations of violations of the rights granted under title VIII of the Civil Rights Act of 1968, and such enforcement activities as appropriate to remedy such violations."

14. On February 27, 2025, the U.S. Department of Housing and Urban Development (HUD) terminated 78 Fair Housing Initiatives Program (FHIP) grants.

6

15. No HUD grant or contract authorized Miami Valley to seek relief of the type sought here against Mr. Shah.

16. Pursuant to 42 U.S.C.A. § 3616a(b)(2), "The Secretary shall use funds made available under this subsection to conduct, through contracts with private nonprofit fair housing enforcement organizations, a range of investigative and enforcement activities designed to--(A) carry out testing and other investigative activities in accordance with subsection (b)(1);" (B) "discover and remedy discrimination in the public and private real estate markets and real estate-related transactions, including, but not limited to, the making or purchasing of loans or the provision of other financial assistance sales and rentals of housing and housing advertising;" and (E) "provide funds for the costs and expenses of litigation, including expert witness fees."

17. Pursuant to 42 U.S.C.A. § 3616a(c)(1), "The Secretary shall use funds made available under this section to enter into contracts or cooperative agreements with qualified fair housing enforcement organizations, other private nonprofit fair housing enforcement organizations, and nonprofit groups organizing to build their capacity to provide fair housing enforcement, for the purpose of supporting the continued development or implementation of initiatives which enforce the rights granted under title VIII of the Civil Rights Act of 1968, as amended. Contracts or cooperative agreements may not provide more than 50 percent of the operating budget of the recipient organization for any one year.")

18. FHIP contracts and funding may be used to "build the capacity of fair housing enforcement organizations:" "establish or support education and outreach programs at the regional and local levels;" or "to support community-based education and outreach activities, including school, church, and community presentations, conferences, and other educational activities."

19. Section 3616a(h)(1) defines "qualified fair housing enforcement organization" as any organization that "(A) is organized as a private, tax-exempt, nonprofit, charitable organization;(B) has at least 2 years experience in complaint intake, complaint investigation, testing for fair housing violations and enforcement of meritorious claims; and (C) is engaged in all the activities listed in paragraph (1)(B) at the time of application for assistance under this section."

20. HUD's annual report for FY 2023 specifically identifies Miami Valley as a "fair housing organization" that received $425,000 in FHIP grants from HUD in FY 2023. See *https://www.hud.gov/sites/dfiles/SFH/documents/FHEO_Annual_Report_FY_2023.pdf*, p. 90.

### *Testing Activities*

21. Amongst other things, the FHAP and FHIP fund "testing activities" designed to enhance enforcement of the Fair Housing Act.

22. *Havens* described "'tester' standing" as follows: "'[T]esters' are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices. … Congress has … conferred on all 'persons' a legal right to truthful information about available housing. [¶] A tester who has been the object of a misrepresentation made unlawful under [now 42 U.S.C. §3604(d)] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to [sue]. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [now 42 U.S.C. §3604(d)].

23. HUD describes "Testing" as follows: "the use of an individual or individuals who, without a bona fide intent to rent or purchase a house, apartment, or other dwelling, pose as a prospective renter or purchaser for the purpose of gathering information that may indicate whether a housing provider is complying with fair housing laws."

24. Both FHIP and FHAP funded entities can use testing "as a tool to investigate potential violations of the Fair Housing Act."

25. Neither FHA, FHAP, FHIP or any other federal statute authorize private non-profits funded by FHIP who use "testing" as an "investigate tool" to initiate litigation in federal court solely on the basis of perceived results of that testing.

26. FHIP's thorough and coherent statutory scheme does not authorize Fair Housing Organizations to engage in "testing" to facilitate later "sue and settle" or "shakedown" tactics without HUD oversight.

### *Private Actions to Enforce the Fair Housing Act*

27. Plaintiff Miami Valley is not amongst those entitled to bring vicarious claims through its own private right of action in federal court.

28. Miami Valley is not amongst those entitled to seek the relief identified in its Complaint.

29. With respect to prospective FHA enforcement by private parties, only "[a]n aggrieved person" may file a Complaint. 42 U.S.C.A. § 3610(a)(1)(A)(i) ("An aggrieved person may, not later than one year after an alleged discriminatory housing practice has occurred or terminated, file a complaint with the Secretary alleging such discriminatory housing practice"); see also § 3612(a) ("When a charge is filed under section 3610 of this title, a complainant, a respondent, or an aggrieved person on whose behalf the complaint was filed, may elect to have the claims asserted in that charge decided in a civil action under subsection (o) in lieu of a hearing under

9

subsection (b). The election must be made not later than 20 days after the receipt by the electing person of service under section 3610(h) of this title or, in the case of the Secretary, not later than 20 days after such service. The person making such election shall give notice of doing so to the Secretary and to all other complainants and respondents to whom the charge relates"). See § 3613.

30. Other than aggrieved persons, only the Secretary of Housing and Urban Development or the Attorney General may bring such actions. 42 U.S.C.A. § 3610(a)(1)(A)(i)("The Secretary, on the Secretary's own initiative, may also file such a complaint"); 42 U.S.C.A. § 3610(e)("If the Secretary concludes at any time following the filing of a complaint that prompt judicial action is necessary to carry out the purposes of this subchapter, the Secretary may authorize a civil action for appropriate temporary or preliminary relief pending final disposition of the complaint under this section. Upon receipt of such an authorization, the Attorney General shall promptly commence and maintain such an action. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with the Federal Rules of Civil Procedure"). See 42 U.S.C.A. § 3610(e); see also 42 U.S.C.A. § 3614(a) and (d)(1)(explicitly providing "the Attorney General may commence a civil action in any appropriate United States district court," and expressly identifying the relief the Attorney General may obtain in district court).

31. With respect to prospective FHA enforcement by private persons, "if the Secretary or a State or local agency has obtained a conciliation agreement with the consent of an aggrieved person, no action may be filed under this subsection by such aggrieved person with respect to the alleged discriminatory housing practice which forms the basis for such complaint except for the purpose of enforcing the terms of such an agreement."

32. Miami Valley is neither a "Private party" or an "aggrieved person" as contemplated by 42 U.S.C.A. § 3610(a)(1)(A)(i).

33. Even if Miami Valley were construed to be an eligible "private party" or "aggrieved person," it would not maintain the Article III or statutory right or authority to raise the claims and see the relief it seeks here.

34. Miami Valley is neither The Secretary of HUD or the Attorney General, or acting on behalf thereof.

35. Standing to sue under pursuant to 42 U.S.C. §3613 of the FHA requires, at minimum, compliance with the requirements of Article III of the United States Constitution. *Havens Rlty. Corp. v. Coleman*, 455 U.S. 363, 372 (1982).

36. *Havens* contemplated an "injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury." Havens, at *373-74.*

37. *Havens* contemplated a narrow exception or modication to the injury in fact requirement in certain cases pursuing an alleged 42 U.S.C. §3604(d).

38. Subsequent decisions have limited the *Havens* exception to its facts. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 331–49, 136 S. Ct. 1540, 1544–54 (2016), as revised (May 24, 2016); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382–99, 144 S. Ct. 1540, 1556–66 (2024).

39. The *Havens Realty Corp. v. Coleman* exception for "tester standing" ("*Havens* exception") is strictly limited to cases brought pursuant to 42 U.S.C. § 3604(d). See *Acheson Hotels*, infra., at p. 12 ("the Fair Housing Act explicitly prohibits "represent[ing] to any person because of race . . . that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available . . . the Court found that the black tester had standing to sue. The Court

explained that the statute created 'a legal right to truthful information about available housing.' The black tester had been personally denied that truthful information, so she had standing to bring her claim").

40. The Sixth Circuit Court of Appeals issued binding precedent applying *All. for Hippocratic Med.* to FHA claims prior to Miami Valley's filing of this Complaint.

41. Article III and The Fair Housing Act also limits who may invoke federal jurisdiction for "vindication of the public interest." 42 U.S.C.A. § 3610(g)(3).

42. Miami Valley is not authorized by statute or Article III to "vindicate the public interest."

## **JURISDICTION**

43. This Court maintains subject matter jurisdiction over Defendants' counterclaims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), in that it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and permanent injunctive relief and damages; and under 42 U.S.C. § 1988, to award attorneys fees, and under 42 U.S.C. § 3601, *et seq.* (The FHA).

## **DECLARATORY JUDGMENT AND INJUNCTION**

44. Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

45. In order to prevent violation of Defendants' private rights, it is appropriate and proper that a declaratory judgment be issued, pursuant to FED. R. CIV. P. 57, declaring

12

unconstitutional and otherwise unlawful the Plaintiff's policies and practices challenged herein.

46. Defendants request that this Court declare that "Fair Housing Organizations," solely on the basis of their status as such, maintain no right or authority to maintain claims for injunctive relief, damages, or attorneys fees to enforce the FHA in instances in which they are not, themselves, directly discriminated against by each named defendant in any such litigation.

47. Defendants request that this Court declare that Fair Housing Organizations violate 24 C.F.R. § 125.107 by employing litigation to recover their testing fees at any rate, much less exorbitant rates such as here.

48. Furthermore, pursuant to 28 U.S.C. § 2202 and FED. R. CIV. P. 65, it is appropriate and hereby requested that this Court issue a permanent injunction prohibiting Plaintiff from continuance of unconstitutional and otherwise unlawful policies and practices that threaten the private rights of Ohio homeowners.

49. It is further appropriate and hereby requested that permanent injunctions issue enjoining Plaintiff and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from (1) employment of "sue and settle" and "shakedown" litigation putatively alleging to enforce the FHA but without HUD approval; (2)  violation of 24 C.F.R. § 125.107; (3) making any state or federal claim for monetary relief payable to Miami Valley or its attorneys that arises from alleged facts revealed by "testing" sponsored, initiated, or underwritten by Miami Valley; (4) initiating, without explicit HUD approval, litigation to enforce the FHA unless Miami Valley itself is the victim of housing discrimination directed solely at Miami Valley; (5) bringing,

without explicit HUD approval, FHA enforcement claims vicariously on behalf of others; (6) settling, without explicit HUD approval, any litigation that Miami Valley initiates.

50.    Defendants request that this Court enjoin Miami Valley and other "Fair Housing Organizations" within its jurisdiction from initiating civil judicial enforcement proceedings in United States District Courts to attempt to remedy alleged discriminatory housing practices that do not directly denied them housing.

**Count I:  Impermissible Invocation of Federal Jurisdiction in Pursuit of Economic Self-Interest at the Expense of Defendant**

51.    "Disability continues to be the top basis of alleged discrimination under the Fair Housing Act, with 5,128 complaints filed with HUD and its state agency FHAP partners in FY23. Race follows, making up 2,158 of the complaints in FY23."  State of Fair Housing, HUD Annual Report for Fiscal Year 2023, at p. 73, avail. online at *https://www.hud.gov/sites/dfiles/SFH/documents/FHEO_Annual_Report_FY_2023.pdf* ("frequency with which the Fair Housing Act's protected classes are alleged in complaints filed with HUD and FHAP agencies").

52.  Pursuant to 24 C.F.R. § 125.107, "The following requirements apply to testing activities funded under the FHIP * * * (b) Testers and the organizations conducting tests, and the employees and agents of these organizations may not:  (1) Have an economic interest in the outcome of the test, without prejudice to the right of any person or entity to recover damages for any cognizable injury."

53.  Miami Valley is a "Fair Housing Organization" funded by HUD.  *See* https://www.hud.gov/program_offices/fair_housing_equal_opp/contact_fhip.

54.  Miami Valley initiated "testing" against Mr. Shah to advance its own economic interests.

55.  Miami Valley initiated this litigation to advance its own economic interests.

14

56. Miami Valley, upon filing this Complaint, immediately offered to dismiss its Complaint in exchange for Mr. Shah's payment of $14,000 and Mr. Shah's agreement to pay Miami Valley for training classes, via zoom, offered by Miami Valley at the rate of $125.00 per person per hour. See *Doc. 5-2.*

57. Miami Valley's submission of a Settlement Agreement to Mr. Shah was virtually concomitant with a copy of the Complaint.

58. Miami Valley's tactics in filing a lawsuit and immediately offering, *sua sponte*, to dismiss the lawsuit in exchange for a cash payment from Mr. Shah displays an impermissible "pattern of shakedown behavior" arising when "testers follow a suspect playbook." *Jordan v. Joe B. Beasley & Assoc., L.P.,* No. 3:23-CV-00496, 2024 WL 150584, at 7–8 (M.D. Tenn. Jan. 12, 2024), *aff'd sub nom. Jordan v. Joe B. Beasley & Assocs., L.P.,* No. 24-5122, 2024 WL 4710157 (6th Cir. Nov. 7, 2024)(further explaining an example of this impermissible "shakedown behavior by testers" as one where a "letter offers an alternative to a lawsuit if the business pays the firm eight thousand dollars").

59. "Courts across the country have condemned this shakedown-like behavior," albeit more commonly in the parallel Americans with Disabilities Act context. *Jordan v. Joe B. Beasley & Assoc., L.P.,* No. 3:23-CV-00496, 2024 WL 150584, at 7–8, citing *Rodriguez v. Investco, LLC*, 305 F. Supp. 2d 1278, 1281-82 (M.D. Fla. 2004) ("The current ADA lawsuit binge is, therefore, essentially drive by economics-that is, the economics of attorney's fees."); *Molski v. Mandarin Touch Restaurant*, 347 F. Supp. 2d 860, 862-63 (C.D. Cal. 2004) ("The ability to profit from ADA litigation has given birth to ... a cottage industry. The scheme is simple: an unscrupulous law firm sends a disabled individual to as many businesses as possible, in order to have him aggressively seek out any and all violations of the ADA. Then, rather than simply

informing a business of the violations, and attempting to remedy the matter through conciliation and voluntary compliance, a lawsuit is filed, requesting damage awards that would put many of the targeted establishments out of business. Faced with the specter of costly litigation and a potentially fatal judgment against them, most businesses quickly settle the matter."); See also *Acheson Hotels, LLC v. Laufer*, 144 S.Ct. 18 (2023)(describing the plaintiff's behavior as "she sues the hotel," and "she often offers to settle immediately for $10,000 in attorneys fees and corrective action . . . circumstances strongly suggest strategic behavior on Laufer's part . . . we have needlessly invited litigants to manipulate our docket").

60. Miami Valley has been at all relevant times aware that Mr. Shah is an immigrant whose first language is not English, who has attempted to represent himself *pro se* in response to Maimi Valley's investigations, threats, and claims.

61. Miami Valley's investigation of Mr. Shah through employment of "testers" was a naked effort to entrap Mr. Shah for its own financial gain.

62. Mr. Shah did not deny housing to Miami Valley.

63. Miami Valley filed its Complaint here even though Mr. Shah did not injure Miami Valley.

64. Miami Valley's Complaint fails to identify a single individual injured by any speech or conduct of Mr. Shah.

65. Miami Valley's Complaint fails to identify how it could vicariously assert standing on behalf of any individual injured by Mr. Shah's speech or conduct.

66. Mr. Shah is directly injured by Miami Valley's failure to adhere to 24 C.F.R. § 125.107(b)(1) through the requirement that he either pay Miami Valley to voluntarily dismiss its Complaint or instead appear and defend here.

67. Through this litigation and its "sue and settle" tactics, Miami Valley impermissibly seeking to advance its own economic interests at the expense of Mr. Shah's private rights.

68. Housing and Urban Development has already provided funds to Miami Valley for the purpose of investigating Mr. Shah and others, through testing and otherwise.

69. Miami Valley brought this action against Mr. Shah even though applicable precedent decided prior to the filing of its Complaint suggest an absence of Article III standing on materially identical grounds upon which Miami Valley seeks standing here.

70. Miami Valley's initiation of litigation here, for its own financial gain, on the basis of its prior employment of testers against Mr. Shah, either is a violation of or proves the violation of 24 C.F.R. § 125.107(b)(1).

71. This Court should declare that Miami Valley's conduct in this case constitutes the type of impermissible shakedown behavior that exceeds its authority pursuant to 24 C.F.R. § 125.107(b)(1).

72. This Court should declare that Miami Valley's Complaint against Defendants in this case, rather than any permissible effort to remedy discriminatory housing practices, is an impermissible attempt to "shakedown" Defendant to advance its own self-interest.

73. This Court should enjoin Miami Valley from initiating litigation or other legal action under the guise of Fair Housing Act enforcement that furthers the economic interests of Miami Valley and/or its legal counsel.

*Count II: Impermissible Delegation of Governmental Authority to Private Actor*

74. *If* the Fair Housing Act are interpreted and construed as authorizing Miami Valley's use of FHIP grants and like-kind funds to initiate, litigate, and/or settle putative FHA enforcement proceedings without HUD guidance, supervision, or approval, *then* that delegation of the

17

governmental authority to enforce the FHA on behalf of others to Miami Valley (and other Fair Housing Organizations) is impermissibly vague or broad.

75. Neither the FHA nor FHIP appear to provide oversight or standards by which Miami Valley may be held accountable to the public for its conduct when employing "sue and settle" tactics.

76. No federal statute or regulation employs any adequate mechanism for ensuring Miami Valley is vindicating the public interest rather than its own private interest when employing "sue and settle" tactics.

**77.** Both Article III and the Private Delegation Doctrine prevent Fair Housing Organizations, including Miami Valley, from, in the absence of a direct violation of its own rights, initiating litigation to "vindicate the public interest" at the expense of private rights of others. See *Acheson Hotels, LLC v. Laufer*, 144 S.Ct. 18, at p. 5-14 (2023)("Rather than assert a violation of her own rights, Laufer casts herself in the role of a private attorney general, surfing the web to ensure hotels' compliance with the Reservation Rule. Laufer has described herself as 'an advocate on behalf of both [her]self and other similarly situated disabled persons.' She admits that, '[a]s a tester, [she] visit[s] hotel online reservation services to ascertain whether they are in compliance with the Americans with Disabilities Act.' As a public official would do, Laufer even monitors those hotel websites she has found lacking . . . Laufer sues 'not to enforce specific legal obligations whose violation works a direct harm' on her, but to force hotels to comply with the Reservation Rule . . . 'Vindicating the *public* interest ... is the function of Congress and the Chief Executive,' however, not private plaintiffs," but "Testers exercise the sort of proactive enforcement discretion properly reserved to the Executive Branch," with none of the corresponding accountability . . . however, chose to "enforce" each technical violation of the ADA she could uncover with a lawsuit. Because she is a private

plaintiff, no discretion was required or exercised. And, of course, Laufer has been willing to forgo her suits if a hotel pays up, even though the ADA provides for no damages for private litigants . . . Laufer's aggressive efforts to personally impose financial penalties for violations of the Reservation Rule go far beyond the role that Congress envisioned for private plaintiffs . . . Ensuring and monitoring compliance with the law is a function of a Government official, not a private person who does not assert a violation of her own rights"), citing *Laufer v. Arpan, LLC*, 29 F.4th 1268, 1291 (11th Cir. 2022) (concurring opinion).

78. No provision within 42 U.S.C. § 1636 provided an intelligible principle or other standard constraining Miami Valley's conduct when engaged in litigation tactics.

79. When the private right of action available to a genuinely "injured" or "aggrieved" party is not employed, vicarious litigation and settlement of claims in federal courts is an inherently governmental function.

80. Adherence to the Separation of Powers articulated within __ of the United States Constitution forbids Plaintiff Miami Valley from initiating, pursuing, and settling litigation to enforce alleged FHA violations without standards, oversight, or accountability to HUD or to the public at any step of the proceedings, unless Miami Valley is somehow personally and uniquely injured pursuant to a violation of the FHA.

81. This Court should declare that delegation of governmental authority to Miami Valley to pursue the claims for relief in its Complaint, if any, without having itself been victimized by housing discrimination, and without government oversight or supervision, is impermissible.

82. This Court should enjoin Miami Valley from invoking federal jurisdiction to privately enforce the FHA in instances without having itself been victimized by housing discrimination.

**Count III:** ***Impermissible Suppression of Pure Speech Protected by the First Amendment the United States Constitution***

83. To the extent that Miami Valley's attempted vicarious enforcement of the FHA against Defendants, or any order of this Court in response, may be construed as state action, its enforcement here impermissibly suppresses, hinders, and punishes protected speech.

84. The sole allegations of discrimination in Plaintiff's Complaint are (1) Mr. Shah's statement, regarding pet deposits for assistance animals, is the indication that "they could work everything out" regarding the issue; and (2) Mr. Shaw never explicitly "agreed to waive the fee." See Plaintiff's Complaint, Paragraph 36, 43.

85. Even at its least protective, "a statement violates § 3604 if it would suggest an improper preference to an ordinary reader or listener." *Czerwinski v. Gallagher*, 661 F. Supp. 3d 718, 723 (E.D. Mich. 2023); see also *Fair Hous. Ctr. of Sw. Michigan v. Hunt*, No. 1:09-CV-593, 2012 WL 11789772, at 10–12 (W.D. Mich. Mar. 29, 2012); *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 577 (6th Cir. 2013) ("A [statement] violates the statute if it suggests to an ordinary reader that a particular group is 'preferred or dispreferred' for housing because of a prohibited factor listed in the statute."); *Campbell v. Robb,* 162 F. App'x 460, 466–67 (6th Cir.2006)(a 'stray remark' wholly 'unrelated to the decisional process' is not actionable").

86. Even threats of litigation and demands to cease and desist are official policies that can deprive a citizen of his constitutional rights. The Supreme Court has clearly expressed that "the threat of burdensome litigation" can "serve as a deterrent and chill protected political speech."[1]

87. Perhaps as importantly to this Court, in *G&V Lounge, v. Michigan Liquor Control Commission,* the Sixth Circuit specifically analyzed the Plaintiff's First Amendment action in

---

[1]     *Wisconsin right to Life.* at 468–70, 127 S.Ct. 2652.

response to a city attorney's threat of litigation: "The city's attorney wrote a letter to Plaintiff stating in pertinent part that: "* * * "in conclusion, if you proceed with your stated intentions of offering any adult-type entertainment at the aforestated location, the City of Inkster will take any and all necessary legal measures to prevent this from occuring [sic]."[2]

88. Miami Valley's initiation and pursuit of litigation against Ms. Shah in response to his "stray statements" violates his First Amendment rights.

89. Imposition of any penalty on Mr. Shah in response to his protected speech violates his First Amendment rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and that this Court:

(1)        Dismiss Plaintiff's Complaint.

(2)        Declare that "Fair Housing Organizations," solely on the basis of their status as such, maintain no right or authority to invoke federal jurisdiction in pursuit of, for themselves or others, injunctive relief, damages, or attorneys fees to enforce the FHA in instances in which they are not, themselves, directly discriminated against by each named defendant in any such litigation.

(3)        Declare that Fair Housing Organizations violate 24 C.F.R. § 125.107 by employing litigation to recover their testing fees at any rate, much less exorbitant rates such as here.

(4)        Enjoin Plaintiff Miami Valley from (1) employment of "sue and settle" and "shakedown" litigation putatively alleging to enforce the FHA but without HUD approval; (2)  violation of 24 C.F.R. § 125.107; (3) making any state or federal claim for monetary relief payable to Miami Valley or its attorneys that arises from alleged facts revealed by "testing" sponsored, initiated, or underwritten by Miami Valley; (4) initiating, without explicit HUD approval, litigation to enforce the FHA unless Miami

---

[2]        *G&V Lounge, v. Michigan Liquor Control Commission,* 23 F.3d 1071 (6th Cir. 1994); *All Children Matter, Inc. v. Brunner* Not Reported in F.Supp.2d, 2011 WL 665356 (S.D.Ohio, 2011).

Valley itself is the victim of housing discrimination directed solely at Miami Valley; (5) bringing, without explicit HUD approval, FHA enforcement claims vicariously on behalf of others; (6) settling, without explicit HUD approval, any litigation that Miami Valley initiates.

(5)      Enjoin Plaintiff Miami Valley from initiating civil judicial enforcement proceedings in United States District Courts to attempt to remedy alleged discriminatory housing practices that do not directly denied them housing

(6)      Pursuant to 42 U.S.C. §1988 and other applicable law, award Defendants their costs, damages, and expenses incurred in bringing this action, including their reasonable attorneys' fees;

(7)      Pursuant to 42 U.S.C. § 3612(p) and other sections of the FHA, award Defendants reasonable attorneys fees in defending this action, and separately, in bringing this counterclaim.

      *and*

(8)      Grant such other and further relief as the Court deems equitable, just, and proper.


      Respectfully submitted,

      */s/ Maurice A. Thompson*
      Maurice A. Thompson (0078548)
      1851 Center for Constitutional Law
      122 E. Main Street
      Columbus, Ohio 43215
      Tel: (614) 340-9817
      *MThompson@OhioConstitution.org*


## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been served upon Plaintiff's counsel on the date of filing:

                              Respectfully submitted,

                              /s/ *Maurice A. Thompson*
                              Maurice A. Thompson (0078548)